**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SCOTT E. MAY a/k/a SCOTT EUGENE | ) | Bankruptcy No. 07-20642JAD |
| MAY and JENNIFER M. MAY a/k/a | ) | |
| JENNIFER MARIE MAY, | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |
| ——————————————— | X | |
| | ) | |
| eCAST SETTLEMENT CORPORATION | ) | Related to Doc. Nos. 8 & 39 |
| assignee of BANK OF AMERICA/FIA | ) | |
| CARD SERVICES, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| - v- | ) | |
| | ) | |
| SCOTT E. MAY and JENNIFER MAY and | ) | |
| RONDA J. WINNECOUR, | ) | |
| | ) | |
| Respondents | ) | |
| ——————————————— | X | |

Appearances:

    Peter J. Ashcroft, Esq. for Movant eCast Settlement Corporation, assignee of Bank of America/FIA Card Services;

    Francis C. Sichko, Esq. for Debtors/Respondents Scott and Jennifer May;

    Ronda J. Winnecour, Chapter 13 Trustee

**<u>MEMORANDUM OPINION</u>**

    This Memorandum Opinion constitutes the Court's findings of fact and

00001567.WPD

conclusions of law pursuant to Fed. R. Bankr. P. 7052. The matter before the Court is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (L) and (O). This matter arises out of the Amended Objection to Confirmation of Chapter 13 Plan filed by Movant eCast Settlement Corporation, as assignee of Bank of America/FIA Card Services, an unsecured creditor ("eCast".) The Amended Objection to Confirmation asserts that the Debtors are not applying all of their projected disposable income towards payment to unsecured creditors for the applicable commitment period of the Chapter 13 Plan as required by 11 U.S.C. §1325(b)(1). The creditor, eCast, asserts that Schedule I (which sets forth income) filed by the Debtors with the Court reflects additional gross income that is not reflected on Debtors' Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form 22C"), a form which is now required for Chapter 13 debtors by Fed. R. Bankr. P. 1007(b)(6). For the reasons expressed below, the Court will overrule the Amended Objection to Confirmation of Chapter 13 Plan and, as a result, will enter a final confirmation order of Debtors' Chapter 13 Plan Dated January 31, 2007.

## I.

Debtors Scott E. and Jennifer M. May ("Mays") filed their voluntary Chapter 13 petition on January 31, 2007. (Dkt. #1). According to Schedule I, Scott May is a restaurant designer and Jennifer May is a registered nurse. (Dkt. #9). The Mays have two young sons, ages 6 and 3. (Id.) Among their assets are a home and two vehicles.

In their Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (Official Form 22C), the Mays report a combined monthly income of $7,820.19 and total deductions of $7,551.58 resulting monthly disposable income of $268.61.[1]  The Mays' monthly income places them above the applicable median income for a family of four in Pennsylvania.  (*See* http://www.usdoj.gov/ust/eo/bapcpa/meanstesting.htm).

The figures contained in the Debtors' Form 22C differ from the numbers contained in the Debtors' Schedules and other documents filed with the Court. The income set forth in the Schedules is higher than what the Debtors' contend is accurate.  The expenses in Schedule J are also allegedly too low, resulting in an Amended Schedule J being filed.

In their Schedule I, the Mays report combined gross monthly income of $8,504.93. (Id.)  Payroll deductions total $2,349.70. (Id.)  Amended Schedule J reflects average monthly expenses of $3,099.08.  (Dkt. #38).  An examination of the Mays' Chapter 13 Plan reflects monthly secured debt not included in Amended Schedule J for the Mays' mortgage, vehicles and other installment debt totaling $2,972.27.[2]  *See* Chapter 13 Plan at §§ 3, 4 (Dkt. #8).  The Mays' average monthly expenses and secured debt obligations total $6,071.35.  Therefore, based upon the

---

[1]  Absent a comparative analysis from the parties, the Court engaged in the laborious task of comparing the figures provided in Form 22C with those in the schedules and Chapter 13 plan.  The comparison is attached as Appendix.

[2] In correspondence, eCast disputed the reasonableness of some of these expenses. However, in its Amended Objection and at the hearing on this matter, eCast did not pursue these objections.

schedules and Chapter 13 Plan, the Mays have monthly disposable income of $83.88.[3]

During the course of this litigation, as part of the written communication between counsel for the parties, the Debtors attempted to explain, in writing, their current financial status, and why their expected income and expenses deviate between their schedules and what is reported in Form 22C. (Dkt. #56.) Mr. May stated that he had changed positions with his employer in February 2007, which was just after the bankruptcy filing. As a result he was no longer eligible for certain commissions that he was previously entitled to receive upon completion of a particular job. (Id.) Mrs. May also advised of an employment change which would require her to travel further resulting in increased transportation expense. (Id.) Further, her health care contribution would be a larger proportion of each paycheck and additional child care would be required one to two days per week. (Id.) Thus, the Mays contend that the income amounts in their Schedule I are overstated, and the expenses are understated somewhat (thus resulting in an amended Schedule J).

The Mays filed a Chapter 13 Plan which proposes to pay $3,100.00 per month for sixty months. (Dkt. #8.) The Plan provides that Debtors have estimated aggregate payments of $17,738.00 to unsecured creditors resulting in an

---

[3] This amount does not take into consideration any Chapter 13 administrative fees, such as counsel fees or Chapter 13 Trustee fees. When these items are taken into consideration, the Debtors have no monthly disposable income. *See* Appendix at page (iii).

estimated distribution of 25.75%.[4]   (Id. at §15.)   One of the Mays' unsecured creditors, eCast, filed an objection to confirmation of the plan on the basis that the plan did not devote enough of the Debtors' projected disposable income for the benefit of unsecured creditors. (Dkt. #20).[5]   The creditor eCast subsequently amended its objection after the Mays filed an Amended Schedule J, asserting a similar objection but changing the way in which eCast itself calculated the Debtors' projected disposable income. (Dkt. #39).   A confirmation hearing was then held before the Court at which time it was admitted, or it became apparent, that the material facts of this controversy are not in dispute.   The merit of eCast's Amended Objection is now ripe for determination.

---

[4] In its Amended Objection, eCast states these figures differently, asserting that unsecured creditors would receive $13,882.80 for a distribution of approximately 20%.  The discrepancy between eCast's calculations and the figures in the Chapter 13 Plan was not explained or apparent to the Court.  In any event, using the monthly disposable income figure set forth in Form 22C, which is $268.61, it appears that from a pure Form 22C analysis the Debtors' disposable income over the life of the plan is $16,116.60 (which is $268.61 multiplied by 60).  However, the Debtors' Plan proposes a dividend to unsecured creditors that exceeds this aggregate sum by $1,621.40 ($17,738.00 minus $16,116.60).

[5] The creditor, eCast, is an unsecured creditor by virtue of a transfer of a claim from Bank of America/FIA Card Services for Debtors' use of a credit card which had a balance of $25,953.54 at the time of filing.  See Claim No. 14; Dkt. # 34.

**II.**

At the heart of this dispute is the amount of funds the Debtors are required to devote to their Chapter 13 plan and, in particular, to unsecured creditors.  The reason why we have this dispute is that the parties disagree on how the Debtors' income and expenses should be determined for purposes of confirmation of the Debtors' plan.  The basis of eCast's Amended Objection is that the Chapter 13 plan is not confirmable because Debtors are not applying all of their "projected disposable income" to payments for the benefit of unsecured creditors as required by 11 U.S.C. §1325(b)(1)(B).  Through its objection, eCast accepts the expenses itemized in the Debtors' Form 22C, because such sums are lower than reported in the Debtors' Amended Schedule J.  The creditor also accepts the gross income (exclusive of payroll deductions) reported in the Debtors' Schedule I, because the sums set forth therein exceed what is set forth in Form 22C.   The Debtors, however, stipulate to the use of the numbers set forth in Form 22C (which would provide for a greater distribution to creditors than the Court's mere use of the reported sums in the Schedules, less secured creditor obligations).

Stated in other words, eCast asserts that the figures set forth in Debtors' Schedule I should be taken into consideration when the Court calculates the Debtors' "projected disposable income".  That amount is asserted by eCast as $8,504.93. The Debtors assert that the income figure from Form 22C, $7,820.19, is the appropriate measure.

Regarding income, the parties disagree how to calculate "projected

disposable income" which, pursuant to 11 U.S.C. §1325(b)(1)(B), is to be devoted by the Debtors to make payments to unsecured creditors.  Specifically, the statute provides:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, the court may not approve the plan unless, as of the effective date of the plan –
>
>> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>>
>> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. §1325(b)(1).

Before becoming enmeshed in any statutory intricacies required for resolving this dispute, it is important to place the matter into perspective by looking at the purpose and underlying policy of the statute.  The fundamental principle in bankruptcy is to provide the honest but unfortunate debtor with a fresh start.  Grogan v. Garner, 498 U.S. 279, 286, 287,  111 S. Ct. 654, 659 (1991).  In particular, Chapter 13 of the Bankruptcy Code, and the associated automatic stay provided by section 362, has at its heart the opportunity to afford those debtors with regular income some breathing room from creditors in order to organize a repayment plan.  11 U.S.C. §362; *See e.g.,* In re Chestnut, 422 F.3d 298, 301 (5th Cir. 2005).

While providing debtors with the opportunity for a fresh start, the Bankruptcy Code attempts to balance the interests of debtors and creditors.  *See*

e.g., In re Harris, 304 B.R. 751, 765 (Bankr. E.D. Mich. 2004); Matter of VanMeter, 137 B.R. 908, 918 (Bankr. N.D. Ind. 1992) *citing* In re Greenberg, 105 B.R. 691, 695 (Bankr. M.D. Fla. 1989) ("a basic underlying principle of the Bankruptcy Code to is to balance the interest, albeit competing interest, between the creditors and the debtor.")  In an attempt to maintain balance between those interests and, to counteract a perceived abuse of the Bankruptcy Code by debtors, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 119 Stat. 37 (2005)("BAPCPA"); In re Ott, 343 B.R. 264, 266, f.n.4 (Bankr. D. Colo. 2006);  In re Parker, 351 B.R. 790, 792-793 (Bankr. N.D. Ga. 2006) ("The purpose of the bill is to improve bankruptcy law and practice by restoring personal responsibility and integrity to the bankruptcy system and ensure that the system is fair for both debtors and creditors." (*quoting* H.R. Rep. No. 31, 109th Cong., 1st Sess., at 2 (2005), U. S. Code Cong. & Admin. News 2005, p. 88)).

Among the changes, Congress attempted to ensure that those debtors that "can pay" do, in fact, pay.  In order to address an apparent perception that debtors who were able to repay some amounts were nevertheless filing Chapter 7, substantial modifications were made to the Code and in particular to 11 U.S.C. § 707.  *See* In re Hardacre, 338 B.R. 718, 720 (Bankr. N.D. Tex. 2006) (*citing* 151 Cong. Rec. S2459, 2469-70 (March 10, 2005)); In re Purdy, 373 B.R. 142, 148 (Bankr. N.D. Fla. 2007) (*quoting* President's Remarks on Signing the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 41 Weekly Comp. Pres.

Doc..pd25ap05_txt-14 (April 20, 2005)("Under the new law, Americans who have the ability to pay will be required to pay back at least a portion of their debts ... This practical reform will help ensure that debtors make a good-faith effort to repay as much as they can afford...")). The changes were aimed, in part, at arriving at a statutorily proscribed determination as to whether a debtor has properly filed a Chapter 7 or has the ability to pay a monthly amount and should be in a Chapter 13.  Hardacre, 338 B.R. at 721.

Prior to the enactment of BAPCPA, debtors in Chapter 13 were required to utilize their "best efforts" (11 U.S.C. §1325(b)(1)(B)), to devote sufficient sums to satisfy the liquidation alternative test (11 U.S.C. §1325(a)(4))[6] and to propose the plan in "good faith" (11 U.S.C. §1325(a)(3)).  Dismissal was warranted for "substantial abuse" which was not defined.  A "totality of circumstances" test was often employed to determine substantial abuse.  Such standards were criticized by some as being subjective and allowing for wide variances as a result of judicial discretion.  See e.g., In re Kogler, 368 B.R. 785, 789 (Bankr. W.D. Wis. 2007)("The House Report on the BAPCPA indicates that the prior statutory standard of 'substantial abuse' was 'inherently vague, which has led to ... disparate interpretation and application by the bankruptcy bench.'" (quoting H. R. Rep. No. 109-31, pt. 1, at 12 (2005))).

Despite the desire to impose objective standards, the drafting of the statute

---

[6] That is, that creditors receive payments equaling at least as much as what they would receive in a hypothetical liquidation under Chapter 7 of the Code.

has been subject to interpretation in numerous instances.  For example, issues of interpretation have arisen regarding the credit counseling requirements imposed by 11 U.S.C.§109(h)(1)(*See e.g.*, In re Tomco, 339 B.R. 145 (Bankr. W.D. Pa. 2006); and the effect of the "hanging paragraph provision" of 11 U.S.C. §1325(a)(*See e.g.*, In re Quick, 371 B.R. 459, f.n. 7, 8 (10th Cir. BAP 2007)).

Among the changes to the Code was the imposition of a mathematical formula in section 707(b), known as the "means test", to determine whether a debtor has the "means" to repay debt.  *See* In re Nance, 371 B.R. 358, 366 (Bankr. S.D. Ill. 2007)("It is clear from the Chapter 7 means test, the adoption of standardized expense calculations for above-median debtors and the calculation methods for determining 'projected disposable income' that a major goal of Congress was to replace judicial discretion with specific statutory standards and formulas.").

With the enactment of the amendments to subsection 1325(b), confirmation of a Chapter 13 plan is ultimately affected by the means test of section 707. Pursuant to 11 U.S.C. §1325(b)(3), the determination of a debtor's "disposable income" in Chapter 13 (as set forth in 11 U.S.C. §1325(b)(2))[7], must now take into consideration expenses "reasonably necessary" as determined by section 707(b)(2),

---

[7] 11 U.S.C. §1325(b)(2) provides, in relevant part:

"disposable income" means current monthly income received by the debtor ... less amounts reasonably necessary to be expended –

(A)(i) for the maintenance or support of the debtor or a dependent of the debtor...

the means test. 11 U.S.C. §§1325(b)(3).[8]  Accordingly, the test which establishes

"disposable income" for above median Chapter 13 debtors appears to be the same

test for courts to determine whether a presumption of abuse arises for those filing

Chapter 7.

Pursuant to 11 U.S.C. §1325(b)(1), if the trustee or a creditor files an

objection to confirmation of the plan, the  plan may not be approved unless either

the value of the distributions is not less than the claim amounts (11 U.S.C.

§1325(b)(1)(A)) or the plan provides that the debtor's "projected disposable income"

over the applicable commitment period will be applied to unsecured creditors

under the plan (11 U.S.C. §1325(b)(1)(B)).

As described above, Section 1325(b)(2) defines the concept of "disposable

income" but the Code fails to define the term "projected disposable income."  The

term "projected disposable income" existed in the Bankruptcy Code prior to the

most recent amendments; however, the meaning of the term in the context of

---

[8] 11 U.S.C. §1325(b)(3) states:

Amounts reasonably necessary to be expended under paragraph (2) shall be
determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if
the debtor has current monthly income, when multiplied by 12, greater than –

(A) in the case of a debtor in a household of 1 person, the median family
income of the applicable State of 1 earner;

(B) in the case of a debtor in a household of 2, 3, or 4 individuals, the
highest median family income of the applicable State for a family of the
same number or fewer individuals;

(C) in the case of a debtor in a household exceeding 4 individuals, the
highest median family income of the applicable State for a family of 4 or
fewer individuals, plus $525 per month for each individual in excess of 4.

BAPCPA has been the subject of much interpretation.  *See e.g.*, <u>In re Purdy</u>, 373 B.R. 142, 145 (Bankr. N.D. Fl. 2007)("Since the enactment of BAPCPA, bankruptcy courts around the country have struggled to define what effect, if any, the amendments' substantial modification of the Bankruptcy Code ... should have on the phrase 'projected disposable income.'"); <u>In re Pak</u>, 378 B.R. 257, 259 (9th Cir. BAP 2007)(...[w]e address one of the most perplexing issues that has arisen in Chapter 13... - interpretation of the term "projected disposable income" in §1325(b)(1)(B).")

The current debate surrounds the methodology for determining "projected disposable income."  The questions presented to the various courts include: Should the determination of the term "projected disposable income" be based solely on a historical perspective of income and expenses from Form 22C (derived from the definition of "disposable income" in section 1325)[9] or should other

---

[9] By 11 U.S.C. § 1325(b)(2) adopting the term "current monthly income" into the term "disposable income", it appears that the term "disposable income" is not forward looking.  The Court reaches this conclusion because the term "current monthly income" is defined in section 101(10A) of the Code, in relevant part, as:

The term 'current monthly income' --

(A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on –

(i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1(B)(ii); or

(ii) the date on which current income is determined by the court for purposes of this title if the debtor does not filed te schedule of current income required by section 521(a)(1)(B)(ii)...

sources, such as Schedules I and J or perhaps other evidence presented by the parties, be considered?

Considerable case law has developed surrounding the interpretation of "projected disposable income." Among the first cases to address the issue was <u>In re Hardacre</u>, 338 B.R. 718, 722-723 (Bankr. N.D. Tex. 2006) which found that "projected disposable income" must include anticipated income and not be a mere average of historical prepetition income. Since the <u>Hardacre</u> decision, case law has developed generally along two lines. One line of cases holds that the term "projected disposable income" differs from the term "disposable income" as it is described in section 1325(b)(2). Therefore, the amount reflected on Form 22C for "disposable income" is merely a starting point for the court's inquiry for determining the "projected" amount of the debtor's disposable income, because the sums set forth in Form 22C are historical and are not forward looking. *See e.g.*, <u>In re Jass</u>, 340 B.R. 411 (Bankr. D. Utah 2006); <u>In re Slusher</u>, 359 B.R. 290 (Bankr. D. Nev. 2007); <u>In re Kibbe</u>, 361 B.R. 302 (1st Cir. BAP 2007); <u>In re Purdy</u>, (Bankr. N.D. Fla. 2007); <u>In re Briscoe</u>, 374 B.R. 1, 13, f.n. 9 (case citation summary therein)(Bankr. D. Dist. Col. 2007). <u>Hardacre</u> and its progeny acknowledge a flexible, sliding scale taking into consideration changes in a debtor's circumstances. *See e.g.*, <u>In re LePlana</u>, 363 B.R. 259 (Bankr. M.D. Fla. 2007)(refusing to consider changes in circumstances ignores the term "projected"); <u>Jass</u>, 340 B.R. 411, 416 (Bankr. D. Utah 2006)( "Under the clear meaning of the statute, a debtor must propose to pay unsecured creditors the number resulting

from Form B22C, unless the debtor can show that this number does not adequately represent the debtor's budget projected into the future.")

A second line of cases adopts the approach that the term "projected disposable income" is the same as the term "disposable income"; and a mechanical test using historical data is to be utilized. *See e.g.,* In re Guzman, 345 B.R. 640 (Bankr. E.D. Wis. 2006); In re Kolb, 366 B.R. 802 (Bankr. S.D. Ohio 2007); In re Briscoe, 374 B.R. 1, 13, f.n. 10 (case citation summary therein)(Bankr. D. Dist. Col. 2007). Among the first cases to follow this reasoning was In re Alexander, 344 B.R. 742 (Bankr. E.D. N.C. 2006). The Alexander court determined that "disposable" income is determined from the six month period prior to filing. Accordingly, the Alexander court concluded that projected disposable income is determined by taking the calculation for current disposable income and multiplying it by the number of months of the proposed plan. Id. at 749.

### III.

Precepts of statutory construction indicate that words should be attributed their plain meaning. *See e.g.,* Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 1149 (1992)("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."(citations omitted)). A statute must be interpreted to give meaning to all of its parts and not be construed in a manner that would render a provision meaningless. *See e.g.,* TRW, Inc. v. Andrews, 534 U.S. 19, 31,

122 S. Ct. 441, 449 (2001); <u>Duncan v. Walker</u>, 533 U.S. 167, 174, 121 S. Ct. 2120, 2125 (2001).  Rules of statutory construction further provide that when Congress includes particular language in one section of a statute but omits it in another, it actions are intentional and purposeful.  <u>BFP v. Resolution Trust Corp.</u>, 511 U.S. 531, 537, 114 S. Ct. 1757, 1761 (1994).

Turning to the language of §1325(b)(1), the term "disposable income" is modified by the word "projected".  Among the meanings for the word "projected" are: to plan, figure or estimate for the future and; to throw or cast forward.  *See* <u>Jass</u>, 340 B.R. at 415; <u>Pak</u>, 378 B.R. at 264 ("The term 'projected' is essentially forward-looking.  It means 'to calculate, estimate or predict (something in the future) based on present data or trends'"*quoting* THE AMERICAN HERITAGE COLLEGE DICTIONARY 1115 (4th ed. 2002)).  Common sense dictates that the use of the word "projected" should be interpreted to mean what it is, i.e. a best guess as to what the future holds.  In this instance, that best guess is applied to a debtor's "disposable income" as that term is defined in section 1325(b)(2).

In the context of section 1325(b)(1)(B), the term "projected disposable income" has as a component an estimate of the future.  By its nature then, this best guess/estimate must have some measure of flexibility to it.  This flexibility is in keeping with the underlying purpose of the Bankruptcy Code of providing a debtor with a fresh start.  Absent such flexibility, if a court is required to look only at a debtor's historical data, a debtor may encounter feasibility issues with a plan where, for example, changes to income (and/or expenses or both) occur at or near

the time of filing (or thereafter).  *See* Slusher, 359 B.R. at 298;  Purdy, 337 B.R.

at 150-152. Such flexibility also serves to maintain the balance sought by the

BAPCPA amendments by allowing for consideration of many variables, including

any increase in a debtor's income to the benefit of the unsecured creditor.  Purdy,

337 B.R. at 151.

By allowing for the interpretation and application of the word "projected" as

stated above, a rebuttable presumption inherently arises using the figures set

forth on Form 22C as a starting point.  Allowing for a presumption that can be

rebutted is also consistent with the aims and objectives of BAPCPA.  *See* Jass, 340

B.R. at 417.  Although Congress desired increased objectiveness and uniformity,

this Court believes that the legislature still intended for Chapter 13 to be

malleable to a certain degree and to provide a realistic determination of a debtor's

ability to make payments throughout the life of the plan.

Utilizing disposable income as reflected on Form 22C as a starting point,

either the debtors, creditors or a trustee may show that particular figures reflected

on the form are not accurate in the context of plan confirmation and request that

the court deviate from the calculation proscribed.  Id. at 418 (debtor can show

that there has been a substantial change in circumstances such that the numbers

contained in Form [22C] are not a fair projection of the debtor's budget in the

future); In re Teixeira, 358 B.R. 484, 487 (Bankr. D. N.H. 2006).  In such

instances, the burden of proof on the objecting party is to make a showing by a

preponderance of the evidence that the calculation of "projected disposable

income" on Form 22C does not realistically reflect a best guestimate of the debtors' anticipated future disposable income.  *See e.g.*, In re Ries, 377 B.R. 777, 787 (Bankr. D. N.H. 2007).  If the objecting party is able to rebut the presumption, the amount of "projected disposable income" may be adjusted by the court for purposes of determining the amount of funds that should be available for unsecured creditors under the plan.

Other recent decisions have found in favor of allowing for a rebuttable presumption.   In Briscoe, the court determined that changes in a debtor's financial circumstances are to be considered in order to determine whether the use of the debtor's "current income" as of the petition date is reasonable to project what the debtor will receive in the future.   374 B.R. at 19.   In considering any changes, the Briscoe court suggested that the court is to be guided by the allowed methodology set forth in the means test.   Id. (citing In re LaPlana, 363 B.R. 259, 266 (Bankr. M.D. Fla. 2007).  As the Court in Briscoe stated:

> Where an above-median income debtor is concerned, the debtor (or other party-in-interest) must demonstrate either a change or reasonably anticipated change in the debtor's income using the methodology set forth in § 1325(b)(2) or a change in the circumstances giving rise to the applicable expense figures dictated by the Local and National Standards (or a change in actual expenses for those types of expenses falling under the Other Applicable Expenses category in the Financial Analysis Handbook) if he wishes to prove that his future income is any different from his current income ... In the absence of such evidence, the disposable income figure listed on the debtor's Official Form 22C will serve as the only evidence of the debtor's disposable income and will therefore dictate the amount of funds to be committed to unsecured creditors under the debtor's plan of repayment. Official Form 22C will, in other words, have precisely the same function as the debtor's schedules had pre-BAPCPA: the evidentiary

> source for a presumption of disposable income that can be rebutted through the submission of extrinsic evidence. *See In re Slusher,* 359 B.R. at 299...

<u>Briscoe</u>, 374 B.R. at 19.

The Bankruptcy Appellate Panel for the Ninth Circuit in <u>Pak</u> similarly concluded that the determination of "projected disposable income" should be subject to the presentation of contrary evidence prior to plan confirmation. <u>Pak</u>, 378 B.R. at 267 ("Chapter13 is not some alternative universe where reality dare not intrude."(*quoting* <u>In re Mullen</u>, 369 B.R. 25, 34 (Bankr. D. Or. 2007))). Recently, the Bankruptcy Appellate Panel for the Tenth Circuit has favored the ability of a party to show that disposable income reflected on Form 22C may not realistically reflect a debtor's ability to fund a plan. <u>In re Lanning</u>, – B.R. –, BAP Nos. KS -07-067, 2007 WL 4348055 (10th Cir. BAP, Dec. 13, 2007). The Court in <u>Lanning</u> analogized the presumption with that provided to a debtor in §707(b)(2)(A)(I) in which a Chapter 7 debtor can rebut a presumption of abuse by showing "special circumstances". <u>Id.</u> at *5.

## IV.

In the present case, eCast asserts its own unique hybrid argument concerning the determination of a debtor's projected disposable income. It would have this Court look in this instance to the Debtors' schedules to determine their income but look to Form 22C to determine their expenses. Although eCast asserts a recognition that "projected disposable income" suggests a forward looking approach, it nevertheless posits that Debtors' Schedule I is the appropriate

measure of income, without regard to Schedule J expenses.  The Court finds

interesting that at the hearing eCast did not dispute the reasonableness of the

amounts stated by the Debtors on either Form 22C or Amended Schedule J.

Rather, eCast merely seeks to pick and choose which methods should be used to

determine which aspects of the competing documents would bring eCast the

greatest benefit.  The creditor eCast, of course, has offered no evidence by which

the Court can conclude which numbers are a more accurate predictor of the

future.  However, the Debtors have, without scientific precision, offered evidence

(to which eCast has stipulated) which explains away why the income[10] and

expense[11] figures set forth in form B22 deviate from what is identified in the

Debtors' schedules.  Thus, it appears to the Court that realistically, the Debtors'

own calculation of projected disposable income in Form 22C is too high.  In fact,

reviewing the totality of the evidence, including the admissions of the Debtors in

their Schedules, Amended Schedules, and the correspondence of record, the Court

doubts if the Debtors have any projected disposable income at all for payment to

unsecured creditors.  *See* Appendix.  As such, it appears to the Court that the

proposed Plan at issue commits the Debtors to fund sums in excess of the

---

[10]  For example, gross income was overstated in Schedule I because Mr. May changed jobs in May of 2007.  In his prior position, Mr. May was paid, among other things, commissions.  In his new position, commission income is non-existent.  It also appears that Mrs. May's Schedule I calculation was based on overtime hours, and the facts are that her hours and pay have been reduced as a result of a change in her employment status as well.

[11]  Regarding  expenses, it was shown that additional child care expenses will be incurred as a result of the change of employment positions of Mrs. May.  In addition, other expenses including additional real estate taxes and utility expenses will be incurred on a regular basis during the pendency of this bankruptcy case.

Debtors' "projected disposable income," and eCast's objection should be overruled

on this basis.[12]

## V.

At its core, bankruptcy and the Chapter 13 process are designed to give

debtors a fresh start. Such a goal can only be met by recognizing that the process

involves the ever changing lives of those within it and those endeavoring to comply

with the intended results of bankruptcy.

Keeping this core concept in mind, this Court holds that the "disposable

income" calculation provided by debtors on Official Form 22C is presumed to be

an accurate reflection of a debtor's "projected disposable income" for purposes of

11 U.S.C. § 1325(b)(1).  Consistent with the fact that Congress has determined

that Chapter 13 is malleable to a certain degree, and consistent with the fact that

the term "projected disposable income" is nothing but a forward-looking best

guestimate of the debtor's future disposable income, this Court also holds that the

presumption is rebuttable by the presentation of extrinsic evidence.

In the case before the Court, the extrinsic evidence is such that it appears

that the Debtors' calculation of monthly disposable income of $268.61 in Form

22C is a generous calculation, and probably exceeds what the Debtors are actually

---

[12]  The Court does have some concerns that the Debtors' plan may not be feasible.
However, neither eCast, the Chapter 13 Trustee nor any other creditor has objected to the Plan
on this basis.  In addition, Mrs. May has indicated that she makes every attempt to obtain
overtime at her job even though these opportunities have been reduced; if she is successful in
obtaining overtime, the additional hours of pay may aid the Debtors' ability to complete their
plan.  In light of these circumstances, and because both creditors and the Debtors appear to
benefit if this case remains in Chapter 13, the Court will confirm the proposed plan.

required to commit to their Plan for the benefit of unsecured creditors under the

Bankruptcy Code.  For this reason, the Court will enter an Order which overrules

eCast's objection.


Dated this 28th day
of January, 2008.                           /s/ Jeffery A. Deller
                                            Jeffery A.  Deller
                                            U.S. Bankruptcy Judge


case administrator to mail:

cc:    Peter J. Ashcroft, Esq.
       Francis C. Sichko, Esq.
       Ronda J. Winnecour, Esq.

**APPENDIX**

00001567.WPD

### Differences Between Form 22C and Schedules (and Data in Plan)
(Numbers in Description Column Reflect Section of Form 22C)

Income:

| Description | Husband | Schedules | Wife | Schedules |
|---|---|---|---|---|
| | | | | |
| 1. Gross Wages | 3,206.53 | 3,567.30 | 4,613.66 | 4,937.63 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| **Total Form 22C** | | | | |
| $7,820.19 | | | | |
| | | | | |
| **Total Schedules** | | | | |
| $8,504.93 | | | | |
| | | | | |
| **Difference** | | | | |
| Scheduled Income Exceeds Form22C by $684.74 | | | | |
| | | | | |

<u>Deductions</u> (i.e., Expenses):

| Description | Form 22C | Schedules (and/or Plan) |
|---|---|---|
| 24.  Food, Clothing, Household Supplies, Personal Care, and Miscellaneous | 1,546.00 | 1,420.00[1] |
| 25A.  Housing and utilities; non-mortgage expenses | 461.00 | 617.00[2] |
| 25B. Housing and Utilities; Mortgage Expense | 0.00 | 1,807.82[3] |
| 27.  Transportation/Vehicle Operation | 400.00 | 555.00[4] |
| 28. Transportation Ownership/Lease Expenses (IRS Standard- First Car) | 229.12 | 537.52[5] |
| 29.  Transportation Ownership Expense (IRS Standard - Second Car) | 0.00 | 435.00[6] |
| 30.  Taxes | 1,554.59 | 2,034.52[7] |
| 31.  Other Payroll Deductions | 205.44 | 530.18[8] |
| 32.  Life insurance | 0.00 | 90.08[9] |
| 35.  Other Necessary Expenses; Childcare | 0.00 | 85.00[10] |
| 36.  Other Necessary Expenses; Healthcare | 0.00 | 85.00[11] |
| 37.  Other necessary expenses; telecommunication services. | 90.00 | 32.00[12] |
| 39.  Health Insurance; Disability Insurance, etc. | 144.00 | 0.00 (already accounted for above) |
| 43.  Education expenses for dependent children less than 18. | 152.00 | 0.00 (already accounted for above) |
| 47.  Future Payments on Secured Claims | 2,676.63 | 191 .93[13] |
| 50.  Chapter 13 Administrative Expenses | 92.70 | 242.70[14] |
| | | |
| **TOTAL** | $7,551.48 | $8,663.75 |

**Summary of Income Less Expenses**

|  | FORM 22C | SCHEDULES (and PLAN) |
|---|---|---|
| **INCOME** | $7,820.19 | $8.504.93 |
| **EXPENSES** | 7,551.48 | 8,663.75[15] |
| **NET** | $   268.71[16] | $ -158.82 |

Endnotes:

1.       Amended Schedule J, lines

|  |  |
|---|---|
| 3.  Home Maintenance and Upkeep | $100.00 |
| 4.  Food | $800.00 |
| 5.  Clothing | $150.00 |
| 6.  Laundry and Dry Cleaning | $ 80.00 |
| 9.  Recreation | $100.00 |
| 17. Other |  |
| Haircuts | $ 55.00 |
| Family Gifts | $100.00 |
| School lunches /School activities | $ 35.00 |

2.       Amended Schedule J, line 2 a. - d.

3.       This item is actually noted on Form 22C, and in Section 3 of the Chapter 13 plan (1st and 2nd mortgage of $1357.77 and $450.00 respectively).

4.       Amended Schedule J, lines 8 and 11(d) ($400 for gas, etc. and $155 for insurance).

5.       This item is the Debtor's Dodge Caravan, and the monthly payment is set forth in Section 4 of the Debtor's Chapter 13 plan. Form 22C, however, mistakenly notes in section 47 that the payment is $241.88.

6.       This item is actually noted on Form 22C, and in Section 3 of the Chapter 13 plan.

7.       Schedule I, line 4(a) totals 1,819.52; and Amended Schedule J, 12 totals $215.00.

8.       Schedule I, lines 4(b)(Insurance), 4(d)(consisting of parking, 401(k), and retirement contributions).

9.       Amended Schedule J, line 11(b).

10.      Amended Schedule J, line 17.

11.      Amended Schedule J, line 7 (medical and dental expenses).

12.      Amended Schedule J, line 17 (alarm system).

00001567.WPD                                         iii

13.     Chapter 13 Plan, Section 4 sets forth monthly installment payments of $68.08, $58.40 and $65.45.

14.     Approximately $92.70 per month is Chapter 13 Trustee fees, and $150 per month is counsel fees.  Trustee fees are included in Form 22C, but there is no reference of counsel fees.  Neither trustee fees nor counsel fees are itemized in the Schedules.  These sums, however, can be derived from the Chapter 13 plan.

15.     This number does not include even the other additional expenses set forth in the Debtors supplemental material submitted at Dkt. # 56.

16.     In Section 47 of Form 22C, the Debtors understated their monthly payment to Chrysler Financial.  In Form 22C, they stated that the monthly payment was $241.88; however, as set forth in the Chapter 13 plan, the payment amount is $537.52- a difference of $295.64.  If this understated amount is corrected, the Debtors' then would have no disposable income whatsoever, as the Form 22C expenses would be $7,847.12 (which in turn exceeds the Form 22C income of $7,820.19).

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SCOTT E. MAY a/k/a SCOTT EUGENE | ) | Bankruptcy No. 07-20642JAD |
| MAY and JENNIFER M. MAY a/k/a | ) | |
| JENNIFER MARIE MAY, | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |
| _____ | X | |
| | ) | |
| eCAST SETTLEMENT CORPORATION | ) | Related to Doc. Nos. 8 & 39 |
| assignee of BANK OF AMERICA/FIA | ) | |
| CARD SERVICES, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| - v- | ) | |
| | ) | |
| SCOTT E. MAY and JENNIFER MAY and | ) | |
| RONDA J. WINNECOUR, | ) | |
| | ) | |
| Respondents | ) | |
| _____ | X | |

**ORDER OF COURT**

    **AND NOW** this **28th** day of **January**, **2008**, for the reasons expressed in the

Memorandum Opinion of even date, the Court hereby **ORDERS, ADJUDGES** and

**DECREES** that the Amended Objection to Confirmation of Chapter 13 Plan of

Movant eCast Settlement Corporation assignee of Bank of America/FIA Card

Services is **DENIED**.

    It is Further **ORDERED** that the appropriate Order of Confirmation of

00001567.WPD

Debtors' Chapter 13 Plan dated January 31, 2007 shall be separately entered.


/s/ Jeffery A. Deller
Jeffery A.  Deller
U.S. Bankruptcy Judge


case administrator to mail:

cc:    Peter J. Ashcroft, Esq.
       Francis C. Sichko, Esq.
       Ronda J. Winnecour, Esq.